## LESSOR RAILWAY COMPANIES EXEMPT FROM THE FRANCHISE TAX.

Common Pleas Court of Franklin County.

STATE OF OHIO v. THE LITTLE MIAMI RAILROAD COMPANY.

Decided, November 17, 1916.

*Taxation—Construction of the Hollinger Law—With Reference to Exemption in Case of Railways Operated by a Lessee—Section 1465-1, et seq.*

A railway company which has leased its line to an operating company is exempt from payment of the state franchise tax, where the operating company is required to and does report and pay the excise tax.

*Edward C. Turner*, Attorney-General, for plaintiff.
*Henderson & Burr*, contra.

BIGGER, J.

This submission of the case is upon the general demurrer to the answer of the defendant, which contains two separate defenses. I shall not take the time to state the substance of the pleadings except to say that the action is brought to recover from the defendant company the franchise tax provided for in what is known as the Hollinger law (102 O. L., 224). This act was a consolidation and revision of the Cole law (95 O. L., 136-143), the Willis law (95 O. L., 124-128), and the Langdon law (101 O. L., 399-425). The defendant is an Ohio corporation, and in 1869 leased its line of railroad to the P., C., C. & St. L. Railway Company, and ever since that date said last named company has maintained and operated the defendant's line of railroad under the terms of that lease. It is also set out in the answer that for the period for which it is sought to hold the defendant for the payment of this franchise tax, its lessee paid the excise tax provided for by the Hollinger act, and this brief statement is sufficient to indicate the question upon which the parties are in dispute, to-wit, whether the payment by the lessee

company of the excise tax imposed by the terms of the Hollinger law exempts the defendant corporation from the payment of the franchise tax.

Very elaborate briefs have been filed and these together with the statute itself have been given careful consideration. I do not deem it necessary to state *in extenso* the many arguments advanced by counsel in their brief based upon the provisions of this act and the decision of the higher courts upon the similar question arising under the provisions of the Willis act, but will content myself with a brief statement of the result of my deliberations. In my opinion it is unnecessary to call to our aid in the true interpretation of this statute, in so far as it affects the question here at issue, more than two or three of the sections of the act itself.

The Willis act, which first imposed upon the corporation this franchise tax to be computed upon its subscribed or issued and outstanding capital stock, did not make any reference to public utilities as such, but prior to its passage, by several independent acts, an excise tax had been levied upon public utility corporations, covering practically the entire field of such activities. The Willis act, which provided in general terms that this franchise tax should be paid by all corporations for profit, both foreign and domestic, exempted from its operation those public utility corporations upon which the state by legislative act had already imposed an excise tax, but without designating them as public utility corporations. It had already become the policy of the state, as declared in the several acts imposing this excise tax, to impose such tax upon public utility corporations, and it was public utility corporations which were exempted by Section 7 of the Willis act from compliance with its terms. When it came to the revision and consolidation of the Willis, Cole and Langdon acts into the Hollinger law, the Legislature saw fit to make use of and define the term "public utility." Section 39 of the Hollinger act thus defines a public utility:

"The term 'public utility' as used in this act means and embraces each corporation, company, firm, individual and associa-

tion, their lessees, trustees, or receivers, elected or appointed by any authority whatsoever and herein referred to as express company, telephone company, telegraph company, electric light company, gas company, natural gas company; pipe line company, water works company, messenger company, signal company, messenger or signal company, union depot company, water transportation company, heating company, cooling company, street railroad company, railroad company, suburban railroad company, and interurban railroad company, and such term 'public utility' shall include any plant or property owned or operated, or both, by any such companies, corporations, firms or individuals or associations.''

The provisions of the Willis act, as carried into the Hollinger act, beginning with Section 106 and continuing to and including Section 132, required all corporations for profit to make a report as therein provided to the tax commission and to pay this franchise tax, but by Section 129 of the act exempts certain public utility corporations from compliance with its provisions. The language of this section is as follows:

''An incorporated company, whether foreign or domestic, owning or operating a public utility in this state, and as such required by law to file reports with the tax commission and to pay an excise tax upon its gross receipts or gross earnings as provided in this act    *    *    *    shall not be subject to the provisions of Sections 106 to 115 inclusive of this act.''

This exempts, by its terms, incorporated companies whether they own or operate a public utility when they are required as public utilities to file reports and to pay an excise tax upon their gross earnings. It will be observed that this exemption extends to all those incorporated companies which are required as public utilities to do this, and it becomes necessary therefore to examine the definition of the term ''public utility.'' The definition makes it include and embrace each corporation and its lessees. Referring again to the exemption Section 129, it will be observed that it exempts each incorporated company, whether owner or operator of a public utility, when *as such* it is required to file reports and pay the excise tax. If public utility

embraces both the owner and the lessee, as it does by force
of the definition, then if either the owner or lessee is required
to and does report and pay the excise tax it seems clear to me
that as a public utility it has reported and paid the excise tax.

It is a well known principle of statutory construction that
effect shall be given if possible to each and every part of the
act, and the Legislature must be supposed to have had some pur-.
pose in view in using the words *"as such"* in this exempting
section. There would be more color for the contention made on
behalf of the state if the exemption had read "an incorporated
company whether foreign or domestic, owning or operating a
public utility in this state, required by law to file reports and
so forth," but instead of so providing the Legislature added the
words *"as such"*—that is, as a public utility required to report,
and the public utility embraces both the owner and the lessee
and it is immaterial to the state which reports and pays, so that
the excise tax provided for is paid by the public utility, which
embraces both the owner and lessee. These words, *"as such,"*
must be given some force and effect, and it appears to me clear
that it was the legislative intention that, whenever the owner or
operator of a public utility is required to report and pay the
excise tax for the public utility, both are exempt from the re-
quirement to report and pay the franchise tax. If that be not
its meaning then I can not see what the Legislature meant by
the use of the phrase *"as such."* It does not provide that when
it is required to report as an incorporated company it shall be
exempt, but when an incorporated company, either owning or
operating a public utility, reports and pays as a public utility
it shall be exempt, and public utility embraces both the owner
and the lessee. So that it in effect says "when an incorporated
company (as the defendant) as a public utility (which embraces
its lessee as well as itself) is required to report and pay the
excise tax it is exempt. Therefore as the lessee (its *alter ego*) is
required to report and pay, it is required to report and pay and
is therefore exempt.

But it is said that this defendant is not a public utility cor-
poration within the definition of the statute for the reason that

the defining statute specifically names the classes of corporations referred to as public utilities and amongst these classes is that of railroad companies, and that by further definition, contained in Section 40 of the act, the defendant is not a railroad company. Section 40 of the act does define the meaning of a railroad company as used in this act in this language:

"When engaged in the business of operating a railroad company either wholly or partially within this state on rights of way acquired and held exclusively by such company or otherwise is a railroad company."

It is contended because the defendant is not engaged in the operation of a railroad that it is not a railroad company. I am unable to reach this conclusion. In my opinion the Legislature did not mean to make the operation a controlling feature of this definition. In defining each and every public utility named in Section 39 the definition begins with the same language, to-wit: "When engaged in the business of," and this phrase in every case is followed by the words: conveying to, transmitting to, operating, furnishing, supplying, transporting, etc. So that if the construction contended for by the Attorney-General be correct, then in every case where a public utility has become insolvent and passed into the hands of a receiver and is being operated by the court, the state will be authorized to levy this franchise tax upon the insolvent corporation, while solvent corporations are exempt.

This construction leads to an absurdity. It certainly was not the legislative intention to thus add to the burdens of corporations which are already insolvent and indeed without assets from which to make payment of such a tax. The manifest purpose of Section 40, which defines the several utilities named in Section 39, is to make clear what is intended to be included within the general terms used in designating the public utilities named in Section 39. As to some of them, as for instance a railroad company, there would seem to be little need of definition. But that is not true as to all of them. Take for instance the term, "sleeping car company," the definition makes this cover sleep-

ing, palace, parlor, chair, dining or buffet cars. Take the term "equipment company" used in Section 39. It would be entirely indefinite without the definition. The same is true of a signal company, heating company and cooling company. The manifest purpose of Section 40 was to make clear what is included within these terms and it was not, in my opinion, intended to say that a railroad company, when it passes into the hands of a receiver, or executes a lease and is not longer operating its own road, is no longer a railroad company; nor that a telephone company or a telegraph company, when a receiver is appointed to take charge of its property, thereupon ceases to be a telephone or telegraph company.

To put the construction upon this language which is claimed for it by the Attorney-General, leads to such absurd results it seems clear to me that no such meaning was intended. I conclude, therefore, that a fair and reasonable construction of the language of Section 129 of the act, taken in connection with Section 39 of the act, leads to the conclusion that it was the legislative intent to exempt railroad corporations which have leased their lines to an operating company which is required to and does report and pay the excise tax provided by this act.

There are other considerations which lead to the same conclusion. One of these is the manifest injustice of imposing this third tax upon public utilities which have already paid a property tax and an excise tax, and that this was recognized as an injustice by the Legislature is apparent from the fact of the exemption itself. It is said, however, in reply to this, that unless this franchise tax is imposed upon the defendant corporation that it will escape taxation altogether. That argument is more specious than sound. The only source from which a public utility, such as a railroad company, can derive funds for the payment of taxes is its earnings, and whether these earnings are divided between two companies or go entirely to one, the earnings are the only source from which the taxes can be paid, whether paid by the one company or be divided between two companies and paid by the two. The burden falls upon the earnings of the road in both cases, and when a lease of a railroad

is made by an owning company, the tax, in every case, will necessarily be taken into consideration in the making of the contract itself; so that it can not be said in any true sense that the owning company escapes taxation entirely, nor is there any apparent reason why the Legislature should make discrimination in taxation against those public utilities which are being operated by a lessee, since it is not the policy of this state, as evidenced by its legislation, to discourage the leasing of railroads.

There is another consideration also leading to the same conclusion. It was decided by the court of appeals in the case of *State* v. *Cleveland & Pittsburgh Railroad Company*, 20 C.C. (N.S.), 61, that such owning railroad companies were exempt from the franchise tax by the terms of the Willis act. It is an established principle governing the construction of statutes, that where they have undergone revision, that the same construction will be given to the statute after revision as before, unless the language of the amended act plainly requires a different construction. In my opinion, the language of the Hollinger law not only does not plainly require a different construction, but, as I read these acts, it appears that the language of the Hollinger law makes plainer than the language of the Willis act that it was the intention to exempt such companies as the defendant from the payment of this franchise tax.

I conclude, therefore, that the answer of the defendant does state a defense to the claim made in the petition, and the demurrer is overruled.